UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD PARKER,

      Petitioner,

v.                          Case No. 8:22-cv-2370-MSS-CPT

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____

## ORDER

      Harold Parker petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state-court convictions for sexual battery on a child under twelve and attempted sexual battery on a child under twelve. After reviewing the petition (Dkt. 1), the response and the appendix containing the relevant state-court record (Dkts. 5, 5-2), and the reply (Dkt. 6), the Court **DENIES** the petition.

## I.    BACKGROUND

      This case arises from Parker's sexual abuse of three minor children—K.H., H.H., and B.H. The victims are sisters, and Parker is their cousin's grandfather.[1] (Dkt. 5-2, Ex. 28, at 270, 576) K.H. was born in 1999, H.H. in 2000, and B.H. in 2002. (Id. at 268, 314, 387) From 2009 to 2012, Parker regularly babysat the victims. (Id. at 293, 764) He ran a "glass shop," and he often took the victims to his warehouse. (Id. at 272-

_____

[1] Parker is not related by blood to the victims. (Dkt. 5-2, Ex. 28, at 704-05)

75, 294) On several occasions inside the warehouse, Parker digitally penetrated K.H. and B.H.'s vaginas. (Id. at 275-78, 333-34) He tried to do the same with H.H., but she "got uncomfortable" and "moved away" from him. (Id. at 297-98; see also id. at 300) In 2013, the victims' mother "cut [them] off from seeing" Parker because he was becoming "obsessive" with them. (Id. at 583, 587) At the time, however, she did not suspect that Parker had molested her daughters. (Id. at 579-80) According to the mother, the victims were "okay with" her decision because they "didn't want to be around [Parker] anymore." (Id. at 588)

The abuse went unreported until August 2016, when K.H. and H.H. ran into Parker at a grocery store. (Id. at 281, 302) The girls were at the "checkout line" with their grandfather, James Burkhalter. (Id. at 281) Parker approached the girls and started a conversation. (Id. at 282) K.H. became "fearful," and H.H. felt "very uncomfortable." (Id. at 303, 374) They began to "mov[e] toward" Burkhalter, who immediately noticed the change in their "demeanor." (Id. at 374-75) Outside the store, Burkhalter asked K.H. for the man's name, and she identified Parker. (Id. at 375) Burkhalter told the victims' mother about the incident. (Id. at 377) She spoke to the victims, learned that Parker had sexually abused them, and contacted the police. (Id. at 303-04, 377-78)

Law enforcement began to investigate. (Id. at 472-73) A detective arranged for K.H. to conduct two "controlled calls" with Parker. (Id. at 475-76) During the first call, K.H. said, "Me and [H.H.] were both talking, and she—she told me that you used to touch her in some places that she didn't like, and you did the same with me, too,

but I want—I want to put it behind us." (Id. at 491) Parker responded, "Absolutely."[2]
(Id.) During the second call, K.H. told Parker she "want[ed] to make sure that you're
really sorry about touching me and [H.H.]" and that "it's not going to happen again."
(Id. at 494) In response, Parker said, "You're not going to believe how sorry I am for
everything that happened in the past. I mean, it came so close to me pretty much ready
to shoot myself, and I am not joking." (Id. at 494-95) Law enforcement separately
arranged for H.H. and B.H. to undergo forensic interviews with the Polk County Child
Protection Team. (Id. at 384-85)

Parker was charged with three counts of sexual battery on a child under twelve.
(Id., Ex. 3) The case went to trial. Parker testified in his defense and denied sexually
abusing the victims. (Id., Ex. 28, at 758-64) The jury found him guilty of sexual battery
on K.H. and B.H. as well as attempted sexual battery on H.H. (Id. at 910-11) Parker
received a total sentence of life imprisonment. (Id., Ex. 5) Following an unsuccessful
direct appeal, he moved for postconviction relief under Florida Rules of Criminal
Procedure 3.800 and 3.850. (Id., Exs. 12, 19) The postconviction court rejected
Parker's claims, and the appellate court affirmed in unexplained decisions. (Id., Exs.
13, 17, 19-20, 22, 26) This federal habeas petition followed. (Dkt. 1)

## II.   LEGAL STANDARDS

### A.   AEDPA

Because Parker filed his federal petition after the enactment of the

---

[2] Later in the call, Parker said, "Well, I have people around me, and I don't think it's the best thing to be on the phone anyways." (Dkt. 5-2, Ex. 28, at 492)

Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA governs his claims. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. Clearly established federal law refers to the holding of an opinion by the United States Supreme Court at the time of the relevant state-court decision. <u>Id.</u> at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## B.    Ineffective Assistance of Counsel

Parker asserts ineffective assistance of counsel—a difficult claim to sustain. Strickland v. Washington, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Because the standards under Strickland and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" Nance v. Warden, Ga. Diag. Prison, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The appellate court summarily affirmed the denial of postconviction relief. (Dkt. 5-2, Exs. 17, 26) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). Because the postconviction court provided

reasons for denying Parker's claims in written orders, (Dkt. 5-2, Exs. 13, 20, 22), this Court evaluates those reasons under § 2254(d).

## III. DISCUSSION

### A.    Ground One—Admission of Child Hearsay

As noted above, H.H. and B.H. recounted Parker's sexual abuse during forensic interviews with the Polk County Child Protection Team. (Dkt. 5-2, Ex. 28, at 384-85) Those interviews were admitted at trial under Florida's "hearsay exception for the statements of a child victim."[3] Burgess v. State, 324 So. 3d 582, 587 (Fla. 1st DCA 2021). Parker contends that the admission of the child hearsay statements violated his federal right to due process because they were not sufficiently "trustworthy and/or reliable at the time they were made." (Dkt. 1 at 4)

Respondent is correct that this claim is unexhausted. (Dkt. 5 at 17-18) Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). To properly exhaust a claim, a petitioner must "do more than scatter some makeshift needles in the haystack of the state-court record." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). Thus, "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts

_____

[3] "For a child hearsay statement to be admissible, the statement must meet two specific reliability requirements: (1) the source of the information through which the statement was reported must show trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." Fitzsimmons v. State, 309 So. 3d 261, 264 (Fla. 1st DCA 2020). Following an evidentiary hearing, the trial court ruled that H.H. and B.H.'s forensic interviews would be admissible at trial based on the two reliability requirements. (Dkt. 5-2, Ex. 8, at 20-23)

that he intends to bring a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 458 (11th Cir. 2015).

Parker argued on direct appeal that the trial court "abused its discretion in summarily concluding the child hearsay statements were trustworthy, [and] that the time, content, and circumstances of their making provided sufficient safeguards of reliability." (Dkt. 5-2, Ex. 7, at 28) Parker did not, however, "clearly indicate" that he "intend[ed] to bring a federal claim." Preston, 785 F.3d at 458. Instead, he relied entirely on Florida caselaw and statutes to support his argument that the child hearsay was inadmissible. (Id. at 28-38) To be sure, Parker made a single, passing reference to the "rigorous and due process[-]required factual analysis" of child hearsay statements. (Id. at 30-31) But "one passing reference to the Due Process Clause" is "insufficient to notify the state court that [a petitioner] is raising a federal claim." Copeland v. Fla. Dep't of Corr. Sec'y, 851 F. App'x 927, 931 n.1 (11th Cir. 2021).[4] Nowhere in his argument did Parker "argue federal standards" or "include references to federal case law." Ramos v. Sec'y, Fla. Dep't of Corr., 441 F. App'x 689, 696-97 (11th Cir. 2011) (petitioner failed to exhaust due process claim by arguing only that admission of evidence "violated his Florida and federal constitutional rights to due process and a fair trial"). Moreover, Parker never clarified whether he intended to invoke the federal Due Process Clause or Florida's Due Process Clause. "Under these circumstances, [Parker] cannot be said to have fairly apprised the state court of his federal . . . claim."

---

[4] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

Preston, 785 F.3d at 459; see also Gray v. Netherland, 518 U.S. 152, 163 (1996) ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the substance of such a claim to a state court."); Zeigler v. Crosby, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003) (bare assertion that petitioner "was denied due process and a fair trial" was "insufficient to present" a federal claim because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause").

Parker cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. See Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. See Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Parker has not shown that an exception applies to overcome the default, this claim is barred from federal habeas review.

### B.    Ground Two—Indefinite Term of Imprisonment

As explained above, Parker received a total sentence of life imprisonment. (Dkt. 5-2, Ex. 5) He argues that his life sentence violated the federal Due Process Clause because it amounted to an "indefinite term of imprisonment." (Dkt. 1 at 5) The postconviction court correctly rejected this claim. (Dkt. 5-2, Ex. 13) "[T]he Florida Supreme Court has held that life sentences are not unconstitutionally indefinite under

the Florida constitution and the United States Supreme Court has held that life sentences do not violate the federal constitution." Nelson v. Does, 756 F. App'x 971, 972 (11th Cir. 2019) (citing Ratliff v. State, 914 So. 2d 938, 940 (Fla. 2005); Harmelin v. Michigan, 501 U.S. 957, 995 (1991)). "The term 'life' is sufficiently definite so that it can be understood and applied," and "[t]here is nothing indefinite about such a sentence." Ratliff, 914 So. 2d at 940.

### C.    Ground Three—Failure to Seek Suppression of Controlled Calls

Parker faults trial counsel for not moving to suppress the controlled calls that K.H. made at the direction of law enforcement. (Dkt. 1 at 7) Florida law allows a "law enforcement officer . . . to intercept a wire, oral, or electronic communication when . . . one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act." Fla. Stat. § 934.03(2)(c). Parker contends that there is no "evidence" that K.H. "voluntar[ily] agreed to the calls." (Dkt. 1 at 7) Thus, he argues that counsel should have moved to suppress the calls on the ground that they were not "voluntar[ily] made by any party." (Id.)

The postconviction court rejected this claim, finding that K.H. "must have consented to making the controlled calls because she did in fact make both of the calls." (Dkt. 5-2, Ex. 20, at 1) The court also noted that K.H.'s "mother was present" during the calls to "make [K.H.] feel more comfortable." (Id.) Because a suppression motion "would not have been granted on these grounds," the court held that Parker "failed to establish deficient performance or prejudice." (Id.)

This ruling was reasonable. "Courts must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000). "[I]n a habeas action the burden is on the petitioner to establish his claim of ineffective assistance of counsel." Simmons v. Wainwright, 710 F.2d 796, 798 (11th Cir. 1983). Thus, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption" of effective representation. Williams v. Allen, 598 F.3d 778, 794 (11th Cir. 2010); see also Putman v. Head, 268 F.3d 1223, 1243 (11th Cir. 2001) ("If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment.").

Parker—who "has the burden of proof and persuasion"—presents no evidence that K.H. failed to consent to the controlled calls. Gissendaner v. Seaboldt, 735 F.3d 1311, 1331 (11th Cir. 2013). Moreover, nothing in the record suggests that K.H. was reluctant to conduct the calls or that they were involuntary. "In the absence of any evidence suggesting coercion, there was no basis for defense counsel to seek suppression of the controlled call[s] under Florida's wiretap statutes." Harris v. Jones, No. 4:15-cv-628-WS-EMT, 2017 WL 1017644, at *14 (N.D. Fla. Jan. 31, 2017), adopted by 2017 WL 1015845 (N.D. Fla. Mar. 15, 2017). Thus, "[c]ounsel [was] not ineffective for failing to file a meritless suppression motion." United States v. Curbelo, 726 F.3d 1260, 1267 (11th Cir. 2013).

**D.    Ground Four—Failure to Object to Alleged Judicial Bias**

Parker contends that trial counsel should have objected when the trial court allegedly "departed from the [role] of a neutral arbiter." (Dkt. 1 at 9) Parker cites an exchange that occurred during counsel's cross-examination of Detective Jeremy Davis:

> Q. So in essence then, the extent of your investigation and the corroboration that you tried to see if these girls were even telling you the truth would have been limited to what these girls told you and th[e] recorded phone call?
>
> A. The—are you asking me what my evidence is in this case? I'm not—
>
> Q. The—I'm telling—what efforts did you make to—other than this recorded phone call and taking testimony from—
>
> A. Due to the—
>
> Q. —[K.H.]—
>
> A. Due to the timespan—
>
> Q. Let me finish, detective.
>
> A. —there was no physical evidence—

(Dkt. 5-2, Ex. 28, at 513-14)

At this point, the court intervened: "Hold on. Hold on. All right. Everybody has got to wait until the person before them is finished talking before we start talking. Are you raising an objection, Ms. Randall [the prosecutor]? I'm not clear where we're going." (Id. at 514) The prosecutor objected that counsel's questions might elicit "some self-serving hearsay." (Id.) She explained that, if counsel "ask[ed] [the detective]"

about the evidence he had collected, he might mention his interviews with Parker, which contained Parker's "self-serving hearsay" denying the abuse.[5] (Id.) Counsel responded that the detective had not "said anything about . . . what [ ] Parker . . . [had] said." (Id. at 515) The court expressed "concern[ ]" because counsel was "kind of, you know, hitting [the detective] hard and if he says, well, [Parker] talked to me and said this, well, a bunch of issues come out." (Id. at 516) The court ultimately allowed counsel to "rephrase the question." (Id.) Counsel then asked the detective a series of questions about "the extent of [his] investigation," each of which he answered without objection. (Id. at 517-18)

According to Parker, counsel should have argued that the trial court abandoned its role as a "neutral and detached magistrate" during this exchange. (Dkt. 1 at 9) The postconviction court found neither "deficient performance [nor] prejudice." (Dkt. 5-2, Ex. 20, at 2) It noted that the trial court "interrupted cross-examination to tell the parties not to talk over one another," that the prosecutor subsequently "ma[de] a hearsay objection," and that counsel was allowed "to rephrase the question which le[d] to the State's objection." (Id.) Thus, counsel had no basis to argue that the trial court abandoned its judicial role and "became an active participant in the trial," as Parker had alleged. (Id.)

The rejection of this claim was reasonable. "[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the

---

[5] Under Florida law, "[s]elf-serving hearsay statements are generally inadmissible." Calloway v. State, 210 So. 3d 1160, 1183 (Fla. 2017).

defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997). "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources, and must be focused against a party to the proceeding." Hamm v. Members of Bd. of Regents of State of Fla., 708 F.2d 647, 651 (11th Cir. 1983). "An exception to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." Id. In other words, the challenged remarks must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994).

Parker fails to establish that the trial court harbored "actual bias" against him. Bracy, 520 U.S. at 905. The court acted "well within [its] discretion" when it sought "to maintain the pace of trial by interrupting . . . counsel's questions." United States v. Wright, 392 F.3d 1269, 1275 (11th Cir. 2004). As noted above, counsel and the detective were talking over each other when the court intervened. The court "had not only the right but a duty to assure that the trial was conducted in an orderly fashion." United States v. Anderson, 577 F.2d 258, 260 (5th Cir. 1978).[6] Indeed, on another occasion, the court directed the prosecutor to "[l]et [defense] counsel finish and then . . . I'll hear you out." (Dkt. 5-2, Ex. 28, at 558) Moreover, the court did not "openly exhibit[ ] a partisan zeal for the [State]" when it (1) asked whether the prosecutor intended to raise an objection and (2) expressed concern that counsel's cross-

---

[6] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

examination of the detective could lead to potentially inadmissible testimony. Hamm, 708 F.2d at 651; see also Liteky, 510 U.S. at 556 ("A judge's ordinary efforts at courtroom administration . . . remain immune."); United States v. Hoker, 483 F.2d 359, 366 n.11 (5th Cir. 1973) (describing as "trivial" trial court's decision to ask prosecutor whether he would "object to hearsay").

Because Parker cannot "overcome [the] presumption of honesty and integrity in those serving as adjudicators," counsel was not deficient for failing to raise the proposed objection. Withrow v. Larkin, 421 U.S. 35, 47 (1975); see also Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.").

### E.     Ground Five—Opening the Door to "Harmful Testimony"

Parker contends that trial counsel provided ineffective assistance by opening the door to "harmful testimony" from Holly Shepard, the victims' mother. (Dkt. 1 at 11) Shepard testified for the defense. (Dkt. 5-2, Ex. 28, at 576) Counsel asked whether she saw any "indication" of sexual abuse when Parker was "taking care of the girls." (Id. at 579) Shepard said that the victims "never came to me and said . . . [Parker] was doing something to them." (Id.) She acknowledged that B.H. "had started having some issues that she was taken to the doctor over," but Shepard "didn't know anything about it having to do with [Parker]." (Id. at 580) Moreover, "nothing that came out of [the doctor's appointment]" led Shepard to believe that Parker was sexually abusing B.H. (Id.) On cross-examination, the prosecutor got Shepard to admit that she had taken B.H. to the doctor because she "walked in on [B.H.] several times touching

herself."[7] (Id. at 595) Counsel objected on relevance grounds, but the court overruled the objection because counsel had "opened" the door "as to why [Shepard] took [B.H.] to the doctor." (Id. at 595-604) Shepard then repeated that she had taken B.H. to the doctor after "walk[ing] in on her . . . touching herself." (Id. at 607) According to Shepard, B.H. "started to cry" when she "tried to talk to her about it." (Id. at 607-08)

Parker faults counsel for "open[ing] the door [to] harmful and prejudic[ial] testimony that [B.H.] was acting as if she was sexually active." (Dkt. 1 at 11) He argues that, but for counsel's alleged error, there is a "reasonable probability" that the jury would have found him "not guilty of all charges." (Id. at 12)

The postconviction court held that Parker could not establish "prejudice." (Dkt. 5-2, Ex. 22, at 1) It noted that "the evidence against [Parker] was voluminous." (Id.) Specifically, "[t]he three victims testified consistently with one another and [Parker] himself made admissions during controlled phone calls." (Id.) Moreover, "[n]o causal link was shown between [B.H.] touching herself and [Parker's] actions." (Id.) Thus, "in light of the other evidence presented against [Parker] at trial," the court found no reasonable probability that "the jury would have acquitted [Parker] had [it] not heard that [B.H.] was taken to the doctor for touching herself." (Id.)

This ruling was reasonable. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1261

---

[7] Shepard clarified that B.H. was touching "her private vaginal area." (Dkt. 5-2, Ex. 28, at 595)

(11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. "Applying AEDPA to Strickland's prejudice standard, [this Court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Parker]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." Mungin v. Sec'y, Fla. Dep't of Corr., 89 F.4th 1308, 1317 (11th Cir. 2024).

Parker cannot meet this demanding standard. Even apart from the testimony about K.H. touching herself, the prosecution presented "substantial evidence" of Parker's guilt. Fugate v. Head, 261 F.3d 1206, 1224 (11th Cir. 2001); see also McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) ("[T]he other substantial evidence of [petitioner's] guilt negates any possibility of prejudice resulting from his attorney's [allegedly deficient performance]."). The victims testified in detail about the sexual abuse to which Parker subjected them. (Dkt. 5-2, Ex. 28, at 275-78, 297-300, 333-34) And Parker made highly incriminating statements during the controlled calls. At one point, K.H. said that she wanted to "put behind us" the fact that Parker had touched the victims in places they did not like. (Id. at 491) Instead of denying the allegations, Parker responded, "Absolutely." (Id.) K.H. also asked Parker to apologize for "touching me and [H.H.]" (Id. at 494) Again, Parker did not deny the allegations. (Id.) Rather, he said that K.H. would "not . . . believe how sorry I am for everything that

happened in the past," and that he had been "close to [ ] pretty much ready to shoot myself." (Id. at 494-95) Moreover, Shepard testified that "nothing that came out of [the doctor's appointment]" led her to believe that Parker was sexually abusing B.H. (Id. at 580) In short, given the strength of the prosecution's case, a fairminded jurist could find no prejudice from the testimony about K.H. touching herself.[8] See Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir. 2019) ("Applying AEDPA deference to the state trial court decision that [petitioner] failed to establish prejudice for Strickland purposes, the question is whether every fairminded jurist would conclude that prejudice has been established.").

### F.      Ground Six—Failure to Object to Alleged Prosecutorial Misconduct

Parker faults trial counsel for failing to object when the prosecutor allegedly engaged in misconduct during closing argument. (Dkt. 1 at 13) According to Parker, the prosecutor (1) "shifted the burden of proof" to the defense and (2) launched "personal attacks" on Parker. (Id. at 13-14) Even under de novo review, this claim fails because any objection would have been meritless. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial

---

[8] Because this claim fails for lack of prejudice, the Court need not decide whether counsel's performance was deficient. See Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013) ("If a defendant fails to satisfy either Strickland prong, we need not address both.").

rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).

First, the prosecutor did not shift the burden of proof. In closing argument, the prosecutor said that Parker displayed "consciousness of guilt" during the controlled calls because he was "reluctan[t] to talk on the phone." (Dkt. 5-2, Ex. 28, at 845) The prosecutor also pointed out that the victims no longer wished to visit with Parker when their mother cut off contact with him. (Id. at 872) Contrary to Parker's argument, these statements did not shift the burden of proof. Nothing in the remarks suggested that Parker had "an obligation to produce any evidence or to prove innocence." United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992). Instead, the prosecutor simply "comment[ed] on the evidence and express[ed] the conclusions [she] contend[ed] the jury should draw from the evidence." Crenshaw v. Sec'y, Fla. Dep't of Corr., No. 16-17735-D, 2017 WL 6761058, at *6 (11th Cir. Oct. 18, 2017).

Even if the prosecutor had shifted the burden of proof (which she did not), Parker cannot show that the challenged remarks "prejudicially affect[ed] [his] substantial rights." Eyster, 948 F.2d at 1206. After closing arguments, the court properly instructed the jury on the prosecution's burden of proof, explaining that (1) the presumption of innocence "stays with the defendant as to each material allegation in the Information, through each stage of the trial[,] unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt"; (2) "the State has

the burden of proving [that] the crime with which the defendant is charged was committed and that the defendant is the person who committed the crime"; and (3) "[t]he defendant is not required to present evidence or prove anything." (Dkt. 5-2, Ex. 28, at 886-87) "[T]he prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992).

Second, the prosecutor did not engage in any impermissible "personal attacks" on Parker. (Dkt. 1 at 14) During the defense case, Parker testified that he did not deny the sexual abuse during the controlled calls because he was concerned that K.H. would get "upset" and "hang the phone up." (Dkt. 5-2, Ex. 28, at 751-52) The prosecutor discussed this testimony in closing argument:

> [O]ne thing that came to my mind is an expression of trying to put lipstick on a pig, right? I don't know if y'all have ever heard of that expression. But in this case, that controlled phone call is a big, ugly, smelly piece of evidence, right? It acknowledges that he molested her. He admits to it: Absolutely. He apologizes for it, right? This is not good. And his attempts on that witness stand were the lipstick trying to paint over it, trying to cosmetically change it, trying to, you know, maybe spray it with a little perfume since it smells bad, put a little dress on it, call it something else.
>
> But, members of the jury, you're asked to use your common sense. We all know what that controlled phone call was. You can say—he can say what he wants about it, but it's still a pig, right?

(Id. at 874) Parker contends that these comments impermissibly "belitt[led]" him and "the defense as a whole." (Dkt. 1 at 14)

20

The challenged remarks were not improper. "Although a prosecutor may not make an argument directed to passions or prejudices of the jurors instead of an understanding of the facts and law, there is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence adduced at trial." United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (citation omitted). Here, the prosecutor attacked Parker's explanation for the controlled calls by describing it as "lipstick on a pig." (Dkt. 5-2, Ex. 28, at 874) That figure of speech was "colorful," but it plainly "relate[d] to the evidence adduced at trial." Bailey, 123 F.3d at 1400. Thus, the prosecutor did not engage in misconduct by making the challenged remarks. See Diaz v. State, 797 So. 2d 1286, 1287 (Fla. 4th DCA 2001) (noting that a prosecutor is not limited to "flat, robotic recitations of 'just the facts'" in closing argument).

## G. Ground Seven—Cumulative Error

Lastly, Parker contends that he is entitled to relief based on the "cumulative effect of trial counsel's errors." (Dkt. 1 at 15) "Under the cumulative error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative error claim "must fail," however, where none of the "individual claims of error" has "any merit." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Here, each individual claim of ineffective assistance lacks merit. Thus, Parker's cumulative error claim necessarily fails.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Parker's petition for writ of habeas corpus, (Dkt. 1), is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Parker and to **CLOSE** this case.

3. Because Parker neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, this 26th day of August 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE